```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Frank C. Brown, Jr.,              :

         Plaintiff,               :

    v.                            :     Case No. 2:10-cv-283

Warden Deb Timmerman-Cooper,      :     JUDGE EDMUND A. SARGUS, JR.
et al.,                                 Magistrate Judge Kemp

         Defendants.              :
```

                        REPORT AND RECOMMENDATION

    Plaintiff Frank C. Brown, Jr., a state prisoner formerly housed at the London Correctional Institution, filed this civil rights action under 42 U.S.C. §1983.  In his complaint, as explained in prior orders of this Court, Mr. Brown alleges that he and other inmates at London were denied adequate amounts of clothing, linens, hygiene materials, laundry detergent, washers, dryers, and cleaning supplies.  Mr. Brown asserts that the defendants' actions violated the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment.

    In an Opinion and Order filed on July 10, 2012, the Court granted in part and denied in part defendants' motion for judgment on the pleadings, dismissing the class action claims in the complaint but denying the motion in all other respects.  In particular, the Court overruled defendants' arguments that the complaint did not adequately plead their personal involvement in the actions described in the complaint and that Mr. Brown did not properly exhaust the remedies available to him under the prison grievance system prior to filing suit.  Defendants have now filed another motion for judgment on the pleadings (their third in this case), arguing that the complaint fails to state a claim upon

which relief can be granted.  That motion is fully briefed.  Mr. Brown has also filed another motion for a temporary restraining order and preliminary injunction - one of several he has filed in this case - asking the Court to provide him some remedy for what he characterizes as retaliation which has affected his ability to litigate this and other cases.  That motion is also fully briefed.  This Report and Recommendation will address both motions.

## I. The Facts

For purposes of ruling on a motion for judgment on the pleading, the well-pleaded and plausible facts must be taken to be true.  See, e.g., Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478, 480 (6th Cir. 1973); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007).  The Court will summarize the operative facts which are found in Mr. Brown's complaint (Doc. 4).  This summary includes facts recited in the exhibits to the complaint, which the Court may consider when ruling on a motion for judgment on the pleadings.  See Haeberle v. University of Louisville, 90 Fed. Appx. 895 (6th Cir. February 6, 2004), citing Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997).

All of Mr. Brown's claims in this case arise from his incarceration at the London Correctional Institution, where he was housed until being transferred to the Madison Correctional Institution in late 2011.  The body of his complaint takes issue with what he characterizes as "a practice of cruel and unusual punishment by not providing adequate clothing and sanitary conditions ...."  In particular, he alleges that prison officials did not provide him with proper or adequate amounts of clothing and laundry facilities.  Although he includes other inmates' situations in his allegations due to his effort to bring this case as a class action, he includes himself in a group of inmates

who were issued two sets of underclothing, or whites, one or two sets of blues (which included shirts and pants), and "no hooded sweatshirts and/or coats or hooded coats for winter, spring, and fall wear." See Complaint, at PAGEID #37.  He also complains that the way laundry was scheduled, many inmates could wash their clothing only once a week.  Finally, he asserts that linens were not timely exchanged for new ones and that the laundry schedule created sanitary problems with towels, which could lead to diseases such as "skin borne maladies, aphids, and illnesses." Id. at PAGEID #38.  He does not allege, however, that he ever contracted any of these ailments.

Mr. Brown's grievances and other attachments shed some additional light on his allegations.  It appears that it was the Institution's policy not to allow inmates to use soap issued for bathing purposes as laundry detergent and to launder inmates' clothing once a week.  Also, it appears that it was policy to issue an inmate three sets of state clothing rather than the one or two sets Mr. Brown claims to have received.  Finally, one of Mr. Brown's grievances states, as does his complaint, that he was not given a hooded sweatshirt (at least when he arrived at London in September, 2008), but only a jacket, even though he had an outside job.  It is these facts which, defendants claim, do not set forth a plausible cause of action under the Eighth Amendment. The Court notes that this motion, filed almost two and one-half years after the complaint was filed, is the first time that defendants have actually addressed the merits of Mr. Brown's constitutional claims.

## II.  Discussion

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  It applies to state officials such as the defendants through the operation of the Due Process Clause of the Fourteenth Amendment.

It has been used to evaluate prison conditions, which, at times, are found to be so at odds with "evolving standards of decency," see Rhodes v. Chapman, 452 U.S. 337, 346 (1981), quoting Trop v. Dulles, 356 U.S. 86, 101 (1958), that they cannot be squared with the language of the Eighth Amendment.  That is, prison "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor can they be grossly disproportionate to the severity of the crime warranting imprisonment." Rhodes v. Chapman, 452 U.S. at 347.  However, conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. See id.  Further, a prison official charged with an Eighth Amendment violation must have acted with "'deliberate indifference' to a substantial risk of serious harm" in order to be held liable.  See Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997), quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994).

   More specifically, as it applies to clothing and sanitation, the Eighth Amendment has been interpreted to forbid prison conditions or practices which pose a substantial risk to an inmate's health or well-being.  See, e.g., Flanory v. Bonn, 604 F.3d 249, 255 (6th Cir. 2010)(holding that an intentional denial of dental care and dental hygiene items "satisfies the objective and subjective requirements of an Eighth Amendment violation...").  As the Court of Appeals explained in Knop v. Johnson, 977 F.2d 996, 1012-13 (6th Cir. 1992), the failure to provide adequate clothing for inmates exposed to winter weather can also violate the Eighth Amendment; "[e]xposure to Michigan winters without adequate clothing can obviously inflict pain.  No legitimate government interest is served by withholding adequate clothing."  The denial of laundry facilities or clean clothes may also constitute an Eighth Amendment violation, but only when the inmate claims to have "suffered a physical injury or a disease as a result of these conditions." Miller v. Brown, 2007 WL 1876506, *8 (D.N.J. June 26, 2007).  Generally, it is the case that, at

least for purposes of a money damages claim, in order for any prison condition to be actionable under the Eighth Amendment, an inmate must show that he or she has been actually harmed by the condition in question. See, e.g., Benjamin v. Fraser, 343 F.3d 35, 51 n. 17 (2d Cir. 2003)("To establish the deprivation of a basic human need such as reasonable safety, an inmate must show 'actual or imminent harm,'" quoting Lewis v. Casey, 518 U.S. 343, 350 (1996)).  Put another way, an inmate who does not claim to have suffered "a severe or prolonged lack of sanitation constituting an infliction of pain within the meaning of the Eighth Amendment" has no claim for damages based on allegedly unsanitary clothing or living conditions. See Washington v. Perry, 2009 WL 2579214, *4 (W.D. Wash. Aug. 19, 2009).  Merely being exposed to conditions which create a risk of harm is no basis for an award of damages unless the harm actually occurs. Molina v. Smearsal, 2011 WL 127158 (N.D. Ohio Jan. 14, 2011).

    The defendants make two arguments in support of their motion for judgment on these claims.  First, they assert that the only relief Mr. Brown sought in his complaint was injunctive relief, and that his transfer to another institution moots any such claim.  Defendants correctly understand the significance of Mr. Brown's transfer as it relates to any potential injunctive relief directed to the clothing and laundry practices at London.  As this Court has held, "[w]hen an inmate files suit against prison officials at the institution of his incarceration based upon those officials' wrongful conduct, seeking declaratory and injunctive relief, and that inmate is subsequently transferred or released, courts routinely dismiss the declaratory and injunctive relief claims as moot." Russell v. Ohio, 2012 WL 870729, *5 (S.D. Ohio March 14, 2012), adopted and affirmed 2012 WL 1142925 (S.D. Ohio Apr. 4, 2012), citing Sossamon v. Texas, 131 S.Ct. 1651, 1669-70 (2011).  Mr. Brown's claims for declaratory and injunctive relief are moot, notwithstanding his argument, in his opposing memorandum, that he has encountered other allegedly unconstitutional conditions at Madison.  Those are simply not the

subject of his complaint or this lawsuit.

Defendants' argument about mootness breaks down, however, when they assert that the only fair interpretation of Mr. Brown's complaint is that he is asking solely for prospective relief and not monetary damages.  It is true that an injunction is the remedy he asks for specifically; however, under Fed.R.Civ.P. 54(c), a judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  See also EEOC v. Massey Ferguson, Inc., 622 F.2d 271, 277 (7th Cir. 1980).  The defendants themselves seem to have understood this; their prior motion for judgment on the pleadings, raising the issue of lack of personal involvement, would have been unnecessary had the complaint requested only prospective relief.  Prison officials sued in their official capacity for injunctive relief need not have been personally involved in the alleged deprivations so long as they possess the power or authority to remedy unconstitutional conditions.  See, e.g., Bodie v. Morgenthau, 342 F.Supp. 2d 193, 203 (S.D.N.Y. 2004)("While a plaintiff many not pursue money damages against an individual defendant who lacks personal involvement with the underlying offense, that does not preclude a plaintiff from seeking prospective, injunctive relief against the same defendant").  Thus, the Court is required to determine if the complaint states a claim for constitutional violations, and for money damages, notwithstanding Mr. Brown's transfer out of the London Correctional Institution.

In the Court's view, Mr. Brown's complaint does not satisfy the current pleading standards which the Supreme Court has clarified in such recent decisions as Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007) and Ashcroft v. Iqbal, 556 U.S. 129 (2009).  The complaint contains essentially no allegations that as a result of any of the conditions to which Mr. Brown was subjected - less than the regulation amount of clothing, infrequent laundry services, using "crusty" towels, or sleeping on pillows without pillowcases - he suffered any harm, let alone

the kind of wanton or unnecessary infliction of pain that rises to the level of an Eighth Amendment violation. His concerns truly seemed to be, at least when he filed the complaint, that the prison was not living up to its own standards concerning the amount and type of clothing issued to inmates, and that the inmates were being forced to experience conditions - such as having to wear the same underclothing for a week at a time - which the prison officials themselves would not consider appropriate. That may be so, but equality between the living conditions of prisoners and prison staff is not the touchstone of the Eighth Amendment; rather, it is the prevention of the wanton or unjustified infliction of unnecessary pain or suffering on inmates.

Prison conditions are rarely ideal. Even standards established by organizations that evaluate prison conditions and recommend best practices "do not establish constitutional minima." Miles v. Bell, 621 F.Supp 51, 60 (D. Conn. 1985). Our system of divided government entrusts the operation of state prisons to the state governments, and particularly the executive branches of those governments. That being so, courts cannot (and should not) substitute their own judgments for those of prison officials about how to operate prisons unless conditions in prisons fall below an acceptable level of decency. In other words, the Constitution, and the Courts which enforce it, do not and should not prevent prison officials from operating prisons "consistent with the penal philosophy of their choosing, absent constitutional violations," and such officials may impose "'restrictive and even harsh'" conditions "unless the evidence demonstrates that conditions are so extreme as to violate basic concepts of humanity and deprive inmates of a minimal level of life's basic necessities." Madrid v. Gomez, 889 F.Supp. 1146, 1262 (N.D. Cal. 1995), quoting Farmer v. Brennan, supra, at 833.

The only allegation made by Mr. Brown that comes even close to satisfying his duty to plead facts, rather than legal conclusions, see Twombly, supra, and to allege a direct injury

from the defendants' actions, is his claim that he was not issued adequate outdoor clothing.  However, the complaint alleges, in an exhibit, only one specific failure to issue a hooded sweatshirt, and that was in September, 2008.  At that time of the year, the failure to provide an inmate with a coat or hooded sweatshirt rather than a shirt and jacket - even if the inmate must work outdoors - is not a *per se* violation of the Eighth Amendment. Mr. Brown does not allege in his complaint that on any particular day, or ever, as a result of inadequate outdoor clothing, he was subjected to severe weather conditions and suffered needlessly from being unprotected from the elements.  Again, this type of claim cannot be sustained by a showing of mild discomfort; even an inmate who "was never issued certain clothing items,... suffered from hurt ears and numb hands, felt frostbite and caught colds" did not prove an Eighth Amendment violation because he "did not show that he was forced to be in the cold for long periods of time or that he suffered anything more than the usual discomforts of winter."  Mays v. Springborn, 575 F.3d 643, 648 (7th cir. 2009).  "Inmates who have been successful in pursuing Eighth Amendment claims related to cold exposure have been exposed to extremely cold temperatures for long periods of time or have had no other means of warming themselves." Rhoden v. Bundren, 2008 WL 747589, *2 (S.D. Ill. March 19, 2008).  Simply put, Mr. Brown has alleged nothing of the sort.  His statement that he and other inmates were not routinely issued hooded sweatshirts or coats cannot, without more, survive a motion to dismiss because it does not indicate what type of harm Mr. Brown actually suffered, if any, for how long he suffered it, and under what circumstances it occurred.  And as noted above, he does not allege any type of injury from the other practices he challenged. Thus, none of his Eight Amendment claims allege the type of denial of the minimal necessities of life, or the wanton or unnecessary infliction of pain, which rise to the level of constitutional violations.  The defendants are therefore entitled to judgment on the pleadings.

III.  The Motion for Injunctive Relief

Mr. Brown's motion for injunctive relief appears to be directed primarily to issues he has had, or is having, with cases other than this one.  He refers specifically to interference with a habeas case due to the confiscation of his legal materials back in 2011, and his continued inability to amend his complaint in Case No. 2:10-cv-965.  None of the issues raised in his complaint in this case are addressed in the motion and, of course, he is no longer subject to those conditions because he is no longer at the London institution.

The Court recommends denying the motion.  In addition to the fact that this case should be dismissed for the reasons set forth above, the Court notes that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  Colvin v. Caruso, 605 F.3d 282, 300 (6th Cir. 2010) (quoting Devose v. Herrington, 42 F.3d 470, 471 (8th Cir.1994)).  "This is because '[t]he purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [he] was or will be harmed through the illegality alleged in the complaint.'"  Colvin, 605 F.3d at 300, quoting Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir.1997); see also S. Milk Sales, Inc. v. Martin, 924 F.2d 98, 102 (6th Cir. 1991), quoting University of Texas v. Camenisch, 451 U.S. 390, 395 (1981).  There are certainly exceptions to this rule for actions which make it impossible for a party even to litigate the case at hand, but as far as this action is concerned, that is not the situation described in the motion.  Therefore, this motion should also be denied.

IV.  Recommendation

-9-

Based on the foregoing, it is recommended that the defendants' motion for judgment on the pleadings (#88) be granted and that this case be dismissed. It is further recommended that Mr. Brown's motion for a temporary restraining order and for a preliminary injunction (#90) denied.

## V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/Terence P. Kemp
United States Magistrate Judge